Mr. Justice Olin
delivered the opinion of the court:
In March, 1874, the plaintiff presented for probate, in the orphan’s court, a written paper purporting to be the last will and testament of John Keefe.
A caveat having been filed in the orphan’s court on the 14th of April, 1874, by Mary A. Poulson, the defendant; thereupon the following issues of fact were sent by the justice holding the orphan’s court for trial before a jury at the circuit court, or rather to the court held for the trial of questions of fact by a jury. The issues to be tried before the jury were as follows:
First. Whether the paper-writing filed in the office of the register of wills, on the 24th of March, 1874, purporting to be the will of John Keefe, deceased, is the last will and testament of the said John Keefe.
Second. Whether the said paper-writing was obtained under undue influence.
*309 Third. Whether the said John Keefe, at the time of the execution of the said paper-writing purporting to be his last will, was of sound and disposing mind, memory, and understanding, and capable of executing a valid deed or contract.
On the trial of these issues a great amount of testimony was taken, most, if not quice, all of which quite unnecessarily appears in the printed bill of exceptions. The jury having found a verdict against the validity of the will, the cause was brought to this court upon a bill of exceptions taken on the trial.
Upon the argument of the cause there seemed to me but two questions worthy to be considered; but little stress having been laid by counsel except upon two points.
The first question arises upon the three prayers, as they are called, asked by the counsel for the caveators, which were •granted by the court, and excejited to by the propounder of the will, namely:
dependant’s first prater.
“If, from the whole evidence aforesaid, the jury shall find that the deceased, John Keefe, left neither wife nor children living at his death, and also that the caveators are children of his two deceased brothers, and were for some time objects of his protection and bounty; and if they shall further find that without cause he conceived the idea that they put spells on him in order to secure to themselves the succession to and inheritance of his property and estate; that he could not be reasoned out of that idea, and that the same existed in his mind, had a controlling influence over it, and the said influence led to the execution.of the paper now propounded as his will, then the law is, that the said idea was an insane delusion, and the said paper is not the will of the said John Keefe, and the jury must so find.”
Granted.
Granting of said prayer by the court excepted to by Mr. Fendall.
dependant’s second prater.
“ If the jury find from the whole evidence aforesaid that, at the time of the execution of said paper herein propounded *310 as the last will of the said John Keefe, he was laboring under the impression and belief that the families of his brothers put spells on him, and intended and had attempted to poison him in order to inherit his property, that the said impression was without any foundation in fact, and that he had no reason, from any facts given in evidence, to support it, but was so strong that he could not be reasoned out of the said fixed impression, and that he made the said paper-writing so propounded under the control and impression, and said im. pression was too strong for him to resist it, the law is, that it is not the will of the said John Keefe.”
Granted.
To the granting of this prayer Mr. Fendall excepts.
dependant’s third prater.
“ If, from the whole evidence aforesaid, the jury shall find that the deceased, John Keefe, without cause or any facts given in evidence conceived that the wives and children of his brothers put spells on him, and intended and attempted to poison him to get his property, and that it was impossible to reason him out of this belief, it was a delusion, and he was of insane mind; and if they shall further find in point of fact there was no ground for this belief, then the burden of the proof is on the propounder of the will to satisfy the j ury, by proofs, that, at the time of making the alleged will, he was entirely free from such delusions, otherwise the verdict of the jury must be against the will under the third issue.”
Granted.
To the granting of said prayer Mr. Fendall excepts.
It was admitted on the argument of this case that the judge properly stated the law to the jury in prayer No. 1, and no serious fault was found with prayer No. 2. But prayer No. 3 was claimed to have misled the jury, and would naturally do so. If thevthird prayer stood alone as the judge’s instructions to the jury on the law of the case, I should think it erroneous. But I think this third prayer should be taken in connection with the first and second, and that the judge was not bound to repeat for the second and third time what he had before said to the .jury. If you only add to the third prayer a sentence or so that was said in the first prayer, the *311 third would be as unexceptionable as the first. But it is claimed that the object of the third prayer was to wrongfully shift the burden of proof from the caveators upon the propounder of the will. If this were so, I see no objection to the ruling of the justice. Keefe was not what is termed in medical jurisprudence a lunatic, that is, a man who is sane one •day and crazy the next. The burden of proof may well be upon a party seeking to avoid such a man’s acts, to show at the particular time the act was done the actor was in such a state of mind as disqualified him from the performance of any legal act. Such a rule, it is admitted, does not apply where a man is clearly proven to be insane at some time before performing the act which is questioned. But as Keefe was not proven to be insane in all respects, but only in reference to his relations, the natural objects of his bounty, the caveators ought to show that at the very time he executed his will the alleged insane delusion in respect to them existed.
But his disease was what medical writers term monomania. When that disease is clearly established by proof, I know not why this presumption should not be indulged in reference to the continuance of such disease as in cases of total insanity. Indeed, I believe it to be true that more per-sons have been cured of what is termed insanity than monomania. If this be true, there is a stronger presumption of the continuance of the latter disease than the former. From the bill of exceptions, when taken in connection with the testimony printed in the record — and the exceptions seem drawn in reference to the printed testimony — this was a singular case of monomania, and that, too, in reference to the natural objects of his (the testator’s) bounty.
The second question I propose to consider arises upon the second bill of exceptions, and the reasons I assign for overruling it may not be concurred in by all the court. This question is of more importance to decide rightly than the case itself, because the latter, if decided wrong, may be corrected, but the former will settle a rule of practice, so far as we can settle it, applicable to this case and to the trial of all other cases.
SECOND BILL OF EXCEPTIONS.
“After the evidence stated in the foregoing bill of exceptions, made part hereof, had been introduced, the defendant’s *312 counsel then asked Mrs. Annie Gainey the following question: ‘Do you know anything about the condition of Michael Keefe’s mother, whether the tradition in the family was as-to whether she was insane or not P But the plaintiffs counsel interposed and objected to the question, on the ground that it was inadmissible to show by family tradition, or in any other way, whether the mother of the testator was-insane; that the evidence proposed to be introduced was mere hearsay, and such inadmissible evidence would tend to mislead the jury and prejudice the plaintiff. But the court admitted the testimony subject to objection and allowed the witness to answer the question; who thereupon testified that she did not know Michael Keefe’s mother, but she always-heard her (witness’s) mother say .that she died out of her senses. Michael Keefe’s mother was dead before she (the witness) joined the family, but she always heard her husband say so. To which ruling, allowing said question to be answered, the plaintiff’s counsel, at the time and before the answer was given by the witness, duly excepted. And the plaintiff prays the court to sign, seal, and cause to be enrolled this his second bill of exceptions; which is accordingly done-this Ith day of March, 1875.
[L. s.] í4D. K. OARTTER,
“ Chief-Justice.”
The question propounded, as stated in the exceptions, I think was inadmissible; but the question was allowed to be answered, subject to the objection of the plaintiff; and the witness answered that she did not know Michael Keefe’s mother, but she always heard her (witness’s) mother say she died out of her senses. It appears by the record that Mrs. Gainey was the wife of Michael Keefe, who was the brother of John, the testator; and the question put to Mrs. Gainey was to elicit from her what she had heard her former husband. (Michael) say in respect to the sanity of his mother and the mother of the testator. While I think it is competent to-prove, in a question of the sanity of a testator, that his father, mother, or perhaps his ancestors in a more remote degree,, brothers or sisters, were of unsound mind, still I think such fact must be proven by a person speaking trom his own. *313 personal knowledge and observation. This caséis attempted to be likened to that of pedigree, where the traditions of the family are received in evidence. But the distinction between the two cases is too manifest to require argument or illustration. The fact of insanity, where it exists, is open to all the world with whom the alleged insane person comes in contact. Not so the paternity of a child, which can seldom be vouched for by more than two persons, and sometimes not very satisfactorily by either, if the whole truth was told. But it appears by the record that before the case was submitted to-the jury, the justice presiding at the trial instructed the jury to lay aside and disregard the testimony of Mrs. Gainey, to the admission of which, conditionally, the plaintiff had excepted. Hence the question arises, whether the error (if it be one) of admitting Mrs. Gainey’s testimony was cured by the direction of the presiding judge to disregard it?
I cannot but observe that all the adjudged cases cited in the argument upon this question were from the State of New York. Two or three of the cases were made upon the return to a writ of certiorari, made by a justice of the peace and two cases which did not originate before a justice of the peace. In one of the cases, Bronson lays down what I think to be the true rule of law; and in the other decision, from the now highest court in the State of New York, the opinion of Grover, J., uses language which, if not taken in connection with the facts of the case then before the court, might seem to overrule the opinion of Bronson. But the opinions of Denio, in the same case alluded to in the court of appeals, would seem to relieve that case from all conflict with the opinion of Justice Bronson. The exceptions in this case must be overruled, and the judgment of the circuit court affirmed.